UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ARTHUR LEE CAL, III,

                Petitioner,

v.                                 CASE NO. 07-11389
                                 HONORABLE STEPHEN J. MURPHY, III

MILLICENT WARREN,

                Respondent.

_____
_____/

**OPINION AND ORDER**
**DENYING PETITIONER'S MOTION FOR RECONSIDERATION,**
**DENYING THE HABEAS CORPUS PETITION, AND**
**DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY,**
**BUT GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Petitioner Arthur Lee Cal, III, has filed a *pro se* habeas corpus petition under 28 U.S.C. § 2254.  The habeas petition challenges Petitioner's convictions for armed robbery and possession of a firearm during the commission of a felony (felony firearm).  Also pending before the Court is Petitioner's motion for reconsideration of the Court's order denying his motion for discovery.  Petitioner's habeas claims lack merit, and the Court was not misled by a palpable defect when it denied Petitioner's motion for discovery.  Accordingly, the habeas petition and motion for reconsideration will be denied.

**I. Background**

    **A.  The Charges, Trial, and Sentence**

Petitioner was charged with two counts of armed robbery, one count of car jacking, and one count of felony firearm. The charges arose from an incident on December 19,

2001, when Petitioner took Michael Bell, Myra Bell, Derrell Johnson, and Charles Jones for a ride in his van after stating that he had to get some money. Petitioner drove to McDougall and Benson Streets in Detroit where Marlen Nixon and Torrey Virgis were standing outside a tavern. Petitioner told Charles Jones to get out of the van and "watch out." Then Petitioner got out of the van and robbed the victims of personal belongings with the help of his co-defendants. Both Petitioner and Derrell Johnson had guns.

Johnson tossed Marlen Nixon's car keys into the street. Michael Bell picked up the keys and drove away in Nixon's car, accompanied by Charles Jones and Derrell Johnson. Petitioner drove away in his van with Myra Bell as his passenger. He was stopped by two police officers about an hour later and arrested on a charge of carrying a concealed weapon.

A few hours later, two different police officers observed Michael Bell, Derrell Johnson, and Charles Jones in the stolen vehicle. After a brief chase, the occupants of the stolen vehicle bailed out of the car. Derrell Johnson was caught and arrested. He later pleaded no-contest to one count of armed robbery and felony firearm. The two juveniles, Michael Bell and Charles Jones, evaded the pursuing officers, but they were arrested a few days later.

Meanwhile, Petitioner made a statement to the police in which he admitted that he dropped off Derrell Johnson and Michael Bell at the scene of the robbery. He also admitted that he and Johnson were armed with guns and that he knew Johnson and Michael Bell were going to commit a robbery. He was tried jointly, but before separate juries, with Charles Jones.

Michael Bell pleaded guilty on the first day of trial and testified against Petitioner.

2

2:07-cv-11389-SJM-CEB   Doc # 22   Filed 02/13/09   Pg 3 of 18   Pg ID 1121

Although Marlen Nixon was unable to identify Petitioner at the preliminary examination or at a line-up, he testified at trial that Petitioner was one of the four men who approached and robbed him. Torrey Virgis was unable to identify Petitioner before or during trial, but he identified Michael Bell in a photographic array before trial.

The prosecutor's theory was that Petitioner was guilty as a principal or as an aider and abettor. Petitioner did not testify or present any evidence. His defense was that he was merely present at the crime scene and that he did not intend to help anyone commit the crimes. He argued through counsel that Michael Bell's testimony was motivated by his plea bargain with the State and was not truthful.

On July 10, 2002, a Wayne County Circuit Court jury acquitted Petitioner of car jacking, but found him guilty of two counts of armed robbery, MICH. COMP. LAWS § 750.529, and one count of felony firearm, MICH. COMP. LAWS § 750.227b. The trial court sentenced Petitioner to two years in prison for the felony firearm conviction, followed by concurrent terms of thirteen to twenty-five years in prison for each armed robbery conviction.

**B. The Appeal and State Collateral Proceedings**

Petitioner challenged the sufficiency and weight of the evidence in an appeal of right. He also claimed that the prosecutor should not have been permitted to endorse two witnesses during trial and that defense counsel was ineffective for failing to file certain motions. The ineffectiveness claim now constitutes Petitioner's third habeas claim. The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished, *per curiam* opinion, *see People v. Cal*, No. 245500 (Mich. Ct. App. Apr. 27, 2004), and on November 22, 2004, the Michigan Supreme Court denied leave to appeal. *See People v. Cal*, 471 Mich. 921; 688 N.W.2d 828 (2004).

3

Petitioner raised habeas claims I - II and IV - VI in a subsequent motion for relief from judgment.  The trial court denied his motion, and both state appellate courts denied leave to appeal.  *See People v. Cal*, No. 270800 (Mich. Ct. App. Dec. 6, 2006); *People v. Cal*, 478 Mich. 924; 732 N.W.2d 922 (2007).

### C.  The Habeas Claims

Petitioner filed his habeas corpus petition on March 30, 2007.  He alleges that the prosecution failed to disclose evidence favorable to the defense, that he was denied effective assistance of trial and appellate counsel, and that he is entitled to re-sentencing. The claims read as follows:

I.  Petitioner's United States 5th Amendment right to due process was violated by the prosecution['s] willful[] or inadvertent failure to disclose exculpatory evidence that would have proved that the petitioner was in police custody during the time the crime was being committed, and that the police officer committed perjury.

II.  Petitioner is entitled to relief from judgment because his 6th Amendment right to effective assistance of counsel was denied in violation of *Strickland v. Washington* when appellate counsel failed to investigate Petitioner's alibi, obtain booking records, challenge the jury instructions or request a *Ginther* hearing in preparation of Petitioner's appeal.

III.  Trial counsel provided ineffective assistance and denied appellant his federal and state constitutional rights where counsel did not file motions to suppress appellant's involuntary statement, to quash the information, or to suppress appellant's similar prior felony conviction.
. . . .

IV.  Petitioner is entitled to resentencing because his 5th Amendment right to due process was denied in violation of *Strickland v. Washington*, 466 U.S. 668, 687-88; 104 S. Ct. 2052 (1984) when counsel failed to raise resentencing as an issue after it had been preserved for appeal and there was not tactical reason for not raising it on appeal.

4

V.      The trial court's sentence violates the principle of proportionality in violation of Petitioner's due process rights under the U.S. Const. 14th Amendment.

VI.     Petitioner is entitled to resentencing because the sentencing judge increased the statutory guidelines range in his case based on facts not proven beyond a reasonable doubt in violation of *Blakely v. Washington* and his 6th Amendment right to jury trial.

Respondent argues in an answer to the habeas petition that the state court's adjudication of Petitioner's third claim was not unreasonable and that Petitioner's remaining claims are barred by his failure to raise the claims in the appeal of right.

The Court has determined that it is more efficient to address the substantive merits of Petitioner's claims than to conduct a procedural-default analysis. Consequently, the alleged procedural default is excused. Courts need not address procedurally defaulted issues before deciding against a petitioner on the merits. *Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008) (quoting *Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).

## II.  Standard of Review

Petitioner is entitled to the writ of habeas corpus only if the state court's adjudication of his claims on the merits–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state

5

court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II). A state court's decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

## III. Discussion

### A. Failure to Disclose Evidence

Petitioner alleges that the prosecution failed to disclose documents, including a police booking sheet, which would have revealed that he was in police custody when the robbery and car jacking occurred. Petitioner further alleges that the police officer who arrested him committed perjury when he testified about the time of Petitioner's arrest. The trial court adjudicated this claim on state collateral review and stated that Petitioner's argument was "specious at best," in light of his admissions to the police and Michael Bell's testimony, which detailed Petitioner's involvement in the crimes.

Prosecutors may not suppress evidence favorable to a defendant, *Brady v. Maryland*, 373 U.S. 83, 87 (1963), nor rely on perjured testimony, *Giglio v. United States*, 405 U.S. 150, 153 (1972); *Napue v. Illinois*, 360 U.S. 264, 269 (1959). "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. There are three components to a

true *Brady* claim: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

To establish that the prosecutor used perjured testimony, Petitioner must show that the testimony relied upon was false and material and that the prosecutor knew the testimony was false. *United States v. Pierce*, 62 F.3d 818, 834 (6th Cir. 1995) (quoting *United States v. Farley*, 2 F.3d 645, 655 (6th Cir. 1993)). "A new trial is required if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . . .'" *Giglio*, 405 U.S. at 154.

The robbery and car jacking occurred about 12:45 a.m. on December 19, 2001. A police booking sheet, which Petitioner claims was withheld from him, indicates that he was admitted at the police station an hour later at 1:45 a.m. The booking sheet by itself is not exculpatory, because it demonstrates that Petitioner arrived at the precinct *after* the robbery and car jacking. Police Officer Scott Stewart, however, estimated at trial that he wrote his preliminary complaint report at the precinct within ninety minutes of arresting Petitioner. Petitioner argues on the basis of this testimony that Stewart must have arrested him at 12:15 a.m. (ninety minutes before 1:45 a.m.) and, therefore, he was in custody at 12:45 a.m. when the robbery and car jacking occurred. The booking sheet was favorable evidence, because it could have been used to impeach Officer Stewart's testimony. Thus, Petitioner has satisfied the first element of a *Brady* claim.

The second element of a *Brady* claim requires showing that the evidence in question was suppressed by the State, either willfully or inadvertently. "*Brady* does not apply when

7

the defendant 'knew or should have known the essential facts permitting him to take advantage of any exculpatory information'" or "when the information is available from another source." *Owens v. Guida*, 549 F.3d 399, 417-18 (6th Cir. 2008) (quoting *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998), and citing *Matthew v. Ishee*, 486 F.3d 883 (6th Cir. 2007)). "[I]n such cases, there is really nothing for the government to disclose." *Coe*, 161 F.3d at 344 (quoting *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. (1991) (quoting *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988)). *See also Spirko v. Mitchell*, 368 F.3d 603, 611 (6th Cir. 2004) (holding that, "because the evidence was available to [the habeas petitioner] from other sources than the state, and he was aware of the essential facts necessary for him to obtain that evidence, the *Brady* rule does not apply").

The booking sheet in question here should have been available to Petitioner from the precinct where he was taken. Because the information was available to him from another source, he has failed to establish the second element of a *Brady* claim.

The third and final element of a *Brady* claim is prejudice. The undisclosed evidence must be "material either to guilt or punishment." *Strickler*, 527 U.S. at 280 (quoting *Brady*, 373 U.S. at 87). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

The booking sheet would have shown either that Officer Stewart was mistaken about the time of Petitioner's arrest or that the booking record was inaccurate and Petitioner did not arrive at the precinct at 1:45 a.m. At best, the undisclosed evidence would have shown a discrepancy in the facts.

Michael Bell and Marlen Nixon, however, testified that Petitioner was involved in the

8

crime, and Petitioner admitted to the police that he took his co-defendants to the scene of the crime, knowing that they intended to commit a robbery. In light of this evidence and the fact that Officer Stewart was not certain about the timing of the events, the result of the trial would not have been different had the booking record been disclosed to the defense. Petitioner has failed to show that the undisclosed evidence was material and that prejudice ensued from suppressing the evidence.

Petitioner also has failed to show that Officer Stewart perjured himself. Stewart estimated times at trial, and he could have been mistaken about the time of Petitioner's arrest. The Court concludes that Petitioner's *Brady* and subornation-of-perjury claims have no merit.

### B. Trial Counsel

Petitioner alleges that his trial attorney was ineffective because the attorney failed to file motions to (1) suppress Petitioner's statement to the police, (2) quash the information, and (3) suppress evidence of Petitioner's prior conviction. The trial court considered and rejected these claims when Petitioner raised them in a motion for new trial, and the Michigan Court of Appeals rejected the claims in the appeal of right. The court of appeals held that Petitioner had failed to overcome the presumption that counsel rendered effective assistance.

A claim of ineffective assistance of counsel requires showing that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Unless a defendant makes both showings [deficient performance and prejudice], it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

9

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. To prevail on his claim, Petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" and that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 688 and 687. The prejudice prong of the *Strickland* test requires showing that the result of the proceeding would have been different "but for counsel's unprofessional errors." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

### 1. Petitioner's Statement to the Police

Petitioner alleges that defense counsel should have moved to suppress his statement to the police because the statement was coerced. Petitioner claims that his teeth became chipped after his arrest and that the chipped teeth would have supported an argument that the police physically abused him.

Defense counsel implied in his cross-examination of two police officers and in his argument to the jury that Petitioner's chipped teeth were the result of police brutality, but counsel did not file a motion to suppress Petitioner's statement to the police on that basis. The trial court and the Michigan Court of Appeals determined that there was no basis for suppressing Petitioner's statement. This conclusion is supported by the record, as the following summary of the evidence indicates.

Investigator Julius Moses interviewed Petitioner on December 19, 2001, in connection with Petitioner's arrest for possession of a handgun. Investigator Moses stated that he read Petitioner's constitutional rights to him and that he was satisfied Petitioner had

10

understood his rights.  Investigator Moses noted on the interrogation record, which required

him to describe the person in custody, that Petitioner's teeth were good.  Investigator

Moses interviewed Petitioner again on the following day.  Once again, he advised Petitioner

of his constitutional rights.  This time, however, he noted on his investigative report that

Petitioner's teeth were chipped.  When asked about the discrepancy in his reports about

Petitioner's teeth, Investigator Moses testified that he had thought Petitioner's teeth were

in good condition on the 19th and that he perceived them as being chipped on the following

day.

   Police Officer Dion Peoples advised Petitioner of his constitutional rights on

December 21, 2001.  Petitioner claimed to understand his rights, and he agreed to give a

statement about his involvement in the robbery and car jacking.  Petitioner acknowledged

during the interview that he had not been denied food, water, a restroom, or access to an

attorney.  He also stated that he had not been threatened or promised anything to make

a statement and that Officer Peoples had treated him well.  About twelve hours later,

Officer Peoples made a record of the interview.  He  noted in his report that Petitioner's

teeth were chipped and stained and that Petitioner had a body scar.  He denied mistreating

Petitioner or having an altercation with him, and he specifically testified that the chipped

teeth were not the result of an altercation.

   The record does not support the suggestion that Petitioner was physically abused

by the police or coerced into making a statement.  In fact, he does not allege that he was

mistreated or coerced into making a statement; he alleges only that his chipped teeth could

have been the basis for a motion to suppress his statement.  The Court believes that filing

a motion to suppress Petitioner's statement would have been futile, given the lack of

11

evidence that Petitioner was mistreated or coerced into making his statements to the police. Therefore, defense counsel was not ineffective for failing to file a motion to suppress the statements.

### 2. Probable Cause to Bind Petitioner over for Trial

Petitioner claims that defense counsel should have moved to quash the criminal information because there was a lack of probable cause to believe he was involved in the crimes. When Petitioner raised this argument in his motion for new trial, the trial court stated that there had been ample evidence to support a finding of probable cause and that a motion to quash probably would have been denied. The Michigan Court of Appeals found no error in the trial court's ruling and concluded that defense counsel was not ineffective for failing to file a motion to quash the information.

This Court agrees with the state courts. There was probable cause to bind Petitioner over for trial, because he conceded in his statements to the police that he was involved in the crimes. There was no error in binding Petitioner over for trial, and defense counsel was not ineffective for failing to attempt to quash the information.

### 3. Evidence of a Prior Conviction

Petitioner's final claim about his trial attorney is that the attorney should have moved to suppress Petitioner's prior conviction for receiving stolen property over $1,000. Petitioner claims that the possibility of being impeached with the conviction kept him from testifying.

The Petitioner contends that the prior conviction could have been suppressed

12

because it involved conduct similar to the charged offense.  The state courts, however, concluded that the prior conviction was admissible under Michigan Rule of Evidence 609(a)(1) and (2) because it involved theft or dishonesty.  Defense counsel was not ineffective for failing to move to suppress a prior conviction that was admissible under the rules of evidence.

To summarize, the motions that Petitioner claims his attorney should have filed would have lacked merit, and it would have been futile to file them.  Therefore, trial counsel was not ineffective for failing to file the motions.  "Counsel cannot be found ineffective for failing to bring meritless motions."  *Johnson v. Tennis*, 549 F.3d 296, 303 (3d Cir. 2008) (citing *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999)).

### C.  Appellate Counsel

Petitioner contends that his appellate attorney also was ineffective.  The proper standard for evaluating a claim about appellate counsel is the standard enunciated in *Strickland*.  *Smith v.* Robbins, 528 U.S. 259, 285 (2000).  Petitioner must show that his appellate attorney "unreasonably failed to discover nonfrivolous issues" and that, but for his attorney's unreasonable failure to raise issues, he would have prevailed on appeal.  *Id.* at 285-86.

### 1.  Failing to Investigate, Obtain Records, or Assert a Claim about Trial Counsel

Petitioner alleges that his appellate attorney should have investigated an alibi defense that he was in police custody at the time of the crimes for which he was charged. Petitioner blames his appellate attorney for not obtaining the police booking records and for not arguing on appeal that trial counsel was ineffective for failing to assert an alibi

defense.  Petitioner also claims that his appellate counsel should have challenged the jury instructions and requested an evidentiary hearing on Petitioner's claim of ineffective assistance of trial counsel.

Petitioner has not alleged how the jury instructions were deficient and, as explained above, the booking record does not support Petitioner's allegation that he was elsewhere at the time of the robbery and car jacking.   Furthermore, Petitioner admitted some involvement in the crime when the police interrogated him.  Given Petitioner's admissions, it was good trial strategy for defense counsel to argue that Petitioner was merely present at the crime scene.  This defense was stronger than an alibi defense would have been. The Court notes, moreover, that Petitioner  admitted at his plea in another case, following his conviction in this case, that he possessed a gun on December 19, 2001, at about 12:45. a.m.  (Tr. July 30, 2002, at 24-25.)  For all these reasons, appellate counsel was not ineffective for failing to investigate a potential alibi defense and for failing to assert that trial counsel had been ineffective for not asserting an alibi defense.


### 2.  The Sentence

Petitioner contends that appellate counsel also should have raised a claim about the trial court's scoring of the Michigan sentencing guidelines.  Petitioner contends that the trial court (1) mis-scored offense variable 14 regarding the offender's role and (2) incorrectly added the total offense variable points.

The trial court scored ten points for offense variable 14 after concluding from Petitioner's age and from the testimony of his co-defendants that he had been the leader

14

of the group.  The testimony at trial supported this conclusion.  Petitioner drove the other defendants to the crime scene after stating that he needed money.  He was several years older than the two youngest co-defendants, who were juveniles, and he instructed one of the juveniles to act as a "lookout" during the robbery.  He was one of two people who possessed a gun during the incident, and there was some evidence that he supplied the gun carried by Derrell Johnson.

As for the total offense variable score, the trial court modified the score after listening to  the parties' arguments.  The court then correctly added the points for the individual offense variables and arrived at a total offense variable score of ninety points: thirty points for offense variable 1; five points for offense variable 2; ten points for offense variable 3; ten points for offense variable 9; twenty-five points for offense variable 13; and ten points for offense variable 14.  *See* Habeas Pet., Appendix D.

Petitioner's arguments about the scoring of the sentencing guidelines lack merit. Therefore, appellate counsel was not ineffective for failing to challenge the trial court's scoring of the sentencing guidelines.

### D.  The Sentence

Petitioner alleges that his sentence violates the principle of proportionality and that the trial court relied on facts not proved beyond a reasonable doubt.  *See Blakely v. Washington*, 542 U.S. 296 (2004).  The United States Court of Appeals for the Sixth Circuit has held that "*Blakely* does not apply to Michigan's indeterminate sentencing scheme." *See Tironi v. Birkett*, 252 Fed. Appx. 724, 725 (6th Cir. 2007) (unpublished opinion), *cert. denied*, __ U.S. __, 128 S. Ct. 1898 (2008).  This Court therefore declines to grant relief on the basis of Petitioner's *Blakely* claim.

15

Petitioner's proportionality argument is unpersuasive, because a plurality of the Supreme Court has held that "the Eighth Amendment contains no proportionality guarantee." *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991). The Constitution "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 1001 (Kennedy, J., concurring) (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)). "The gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003).

Petitioner was twenty-five years of age at sentencing, and he had a criminal record. He received a mandatory sentence of two years for the felony firearm conviction and a consecutive sentence of thirteen to twenty-five years for the armed robbery convictions. The Supreme Court determined in *Harmelin* that life imprisonment without the possibility of parole for possession of more than 650 grams of cocaine was not cruel and unusual punishment even though Harmelin had no prior felony convictions. *Harmelin*, 501 U.S. at 1009 (1991). Petitioner, in contrast, had a criminal record and was convicted of a violent offense. If Harmelin's sentence was not grossly disproportionate to the offense, Petitioner's minimum sentence of thirteen years for an armed robbery cannot be considered grossly disproportionate. His proportionality argument fails.

## IV. Conclusion

The state courts' adjudications of Petitioner's claims did not result in unreasonable determinations of the facts or in decisions that were contrary to, or unreasonable applications of, clearly established federal law as determined by the Supreme Court. Accordingly, the habeas corpus petition [Dkt. 1] is **DENIED**.

16

Petitioner's motion for reconsideration of the order denying his motion for discovery [Dkt. 19] likewise is denied.  Petitioner's motion sought discovery and appointment of counsel for the purpose of locating police dispatch logs, license plate records, and other documentation that would have indicated when police officers first came into contact with him on the morning of his arrest.  The Court concluded above that the police booking record might have enabled Petitioner to show that Officer Stewart was mistaken about the time of Petitioner's arrest, but the evidence would not have exculpated Petitioner, given his admissions to the police and the testimony at trial.  Petitioner's factual allegations, even if fully developed, would not entitle him to relief.  *See Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997).  Therefore, the Court was not misled by a "palpable defect" when it denied Petitioner's motion for discovery.  Local Rule 7.1(g)(3) (E.D. Mich. Dec. 1, 2005).

The Court declines to grant a certificate of appealability because reasonable jurists would not disagree with the Court's resolution of Petitioner's claims, and the issues do not warrant encouragement to proceed further.  *Banks v. Dretke*, 540 U.S. 668, 674 (2004).  Petitioner nevertheless may take an appeal from this Court's decision *in forma pauperis* because an appeal arguably could be taken in good faith.


s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated:  February 13, 2009

17

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 13, 2009, by electronic and/or ordinary mail.

s/Alissa Greer
Case Manager

18